UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERESA MILLER,

                Plaintiff,                              Hon. Ellen S. Carmody

v.

                                                Case No. 1:12-cv-391

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.
§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim
for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under
Titles II and XVI of the Social Security Act. On July 5, 2012, the parties agreed to proceed in this
Court for all further proceedings, including an order of final judgment. (Dkt. #10).

Section 405(g) limits the Court to a review of the administrative record and provides
that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The
Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons
stated below, the Court concludes that the Commissioner's decision is not supported by substantial
evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for
further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 43 years old on her alleged disability onset date. (Tr. 202). She successfully completed high school and worked previously as an assembler and alarm monitor. (Tr. 21, 42). Plaintiff applied for benefits on April 8, 2008, alleging that she had been disabled since October 15, 2006, due to joint pain, Raynaud's disease, back and neck pain, right elbow pain, right shoulder pain, left shoulder and elbow pain, abdominal pain, knee pain, and depression. (Tr. 202-12, 226). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 122-201). On June 23, 2010, Plaintiff appeared before ALJ Allen Erickson, with testimony being offered by Plaintiff and vocational expert, Tom King. (Tr. 30-94). In a written decision dated August 25, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 13-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated the appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

# RELEVANT MEDICAL HISTORY

On May 7, 2008, Plaintiff participated in a consultive evaluation conducted by licensed psychologist George Starrett, Ed.D. (Tr. 300-02). Plaintiff reported that "I haven't been able to do a job, and the jobs I have been having, I had difficulty doing them because of pain in my joints." (Tr. 300). Plaintiff further stated that "the pain is just unbearable at times...my hands always hurt, and every joint in my body is sore." (Tr. 300). Plaintiff reported that she "has frequent episodes of crying and periodic suicidal ideations." (Tr. 300). Plaintiff exhibited "limited" motivation and "poor self esteem," but the results of a mental status examination were otherwise unremarkable. (Tr. 301-02). Plaintiff was diagnosed with "mood disorder due to general medical status" and her GAF score was rated as 50.[1] (Tr. 302).

On June 11, 2008, Plaintiff was examined by Dr. Elaine Kountanis. (Tr. 304-07). Plaintiff reported that she was unable to perform full time work due to "chronic pain syndrome." (Tr. 304). Plaintiff reported that she has had "a number of orthopedic surgeries on her joints in the past." (Tr. 304). An examination of Plaintiff's extremities revealed the following:

> No cyanosis or edema of limbs; no joint erythema or edema; radial and pedal pulses intact; there are trigger points for pain over her shoulders, elbows, anterior chest, trapezius and lateral thigh muscles; she has exquisite pain on dorsiflexion of her right wrist without any resistance given due to right lateral epicondylitis; surgical scars on her shoulders and the left lateral elbow from her orthopedic surgery; negative Tinel's[2] at the wrists; ROM [range of motion] of her

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

[2] Tinel's test (or Tinel's sign) is performed to determine the presence of carpal tunnel syndrome. *See* Tinel's and Phalen's Tests, available at http://www.carpal-tunnel-symptoms.com/tinels-and-phalens-tests.html (last visited on September 12, 2013). Tinel's test is performed by tapping over the carpal tunnel area of the wrist with the palm up. A positive test causes tingling or paresthesia, and sometimes even a "shock type sensation," in the median nerve

shoulders is normal overhead and ROM of the wrists is normal.

(Tr. 305-06).

The results of a neuromuscular examination were largely unremarkable, but the doctor noted that Plaintiff's "right hand grip [was] limited by pain." (Tr. 306). The doctor also observed that Plaintiff's "clinical presentation" was "characteristic for fibromyalgia." (Tr. 306-07).

Treatment notes dated July 16, 2008, indicate that Plaintiff was suffering "classic" right lateral epicondylitis which "has not improved [with] conservative therapy." (Tr. 420). Treatment notes dated August 18, 2008, indicate that Plaintiff was suffering from osteoarthritis. (Tr. 418).

On November 13, 2008, Plaintiff was transported to the emergency room "due to excessive drinking today and thoughts of suicide." (Tr. 393-94). Plaintiff reported "I don't want to be alive." (Tr. 393). Plaintiff also reported that she "tried to kill herself in August by overdosing on Xanax." (Tr. 396). Plaintiff further stated that she "plans on taking sleeping pills to kill herself but is afraid of getting sick." (Tr. 393). Plaintiff's blood alcohol level upon arrival at the hospital was 0.323. (Tr. 394). Once Plaintiff became sober, she denied suicidal thoughts. (Tr. 397). After assuring hospital officials that she would contact a therapist, Plaintiff was discharged home in the care of her husband. (Tr. 394-97).

On January 20, 2009, Plaintiff underwent right knee surgery performed by Dr. Harold Cline. (Tr. 347-49). Specifically, the doctor performed "transarthroscopic surgery of the right knee with chondroplasty of the medial femoral condyle, lateral femoral condyle, trochlea and patella." (Tr. 347). On March 2, 2009, Plaintiff was examined by Dr. Cline. (Tr. 365-66). Plaintiff reported

---

distribution. *Id.*

that she "is having improvement of her pain symptoms, especially over the lateral right knee." (Tr. 365). Plaintiff reported that she "has been ambulating well and working on her stretching exercises at home." (Tr. 365). Plaintiff further reported that "she only notices pain [in her right knee] after driving for long periods of time." (Tr. 365).

On April 20, 2009, Plaintiff was examined by Dr. Cline. (Tr. 362-64). Plaintiff reported that she "has been doing stretches and physical therapy for her right knee with marked improvement," but that she "continues to intermittently have right knee pain and morning stiffness that is worse in the morning and worse with activity." (Tr. 362). Plaintiff also reported that she was experiencing pain in her right elbow and left knee. (Tr. 362). With respect to Plaintiff's right knee, the doctor instructed Plaintiff "to continue exercising and stretching as well as physical therapy." (Tr. 364). With respect to Plaintiff's right elbow, the doctor diagnosed Plaintiff with "chronic" right elbow lateral epicondylitis. (Tr. 364).

On May 4, 2009, Plaintiff participated in an MRI examination of her left knee the results of which revealed "tiny full thickness chondral fissure over the lateral patellar facet with focal adjacent subchondral bone marrow edema." (Tr. 361).

On July 2, 2009, Plaintiff underwent left knee surgery performed by Dr. Cline. (Tr. 340-42). Specifically, the doctor performed the following procedures:( 1) chondroplasty of the lateral plateau, lateral condyle and medial condyle; (2) removal of loose body, lateral compartment; (3) partial lateral meniscectomy; (4) partial synovectomy; and (5) excision of medial plica. (Tr. 340). On July 15, 2009, Plaintiff was examined by Dr. Cline. (Tr. 352-53). With respect to her left knee, Plaintiff reported that she "has been doing well" and that her "preoperative symptoms are resolved." (Tr. 352). X-rays of Plaintiff's left knee, taken April 21, 2010, revealed "effusion

without acute osseous findings." (Tr. 460).

Plaintiff testified at the administrative hearing that she experiences "constant pain" in her lower extremities and "can't sit for too long or stand for too long." (Tr. 52). Plaintiff also testified that her level of pain interferes with her ability to concentrate sufficiently to perform a job. (Tr. 53-54). Plaintiff also testified that her ability to perform work would be limited because her "right hand...goes numb." (Tr. 54). Plaintiff also reported that she experienced work preclusive pain and limitation in her elbows. (Tr. 54).

Plaintiff also testified that she had "been seeing a counselor," but stated that she was not sure if the records pertaining to such had been submitted to the Commissioner. (Tr. 58). In this regard, Plaintiff's representative stated that her attempts to obtain Plaintiff's treatment records from her counselor were thus far unsuccessful. (Tr. 59-60). Plaintiff reported that her present medication regimen helps "a little" and she "[has not] thought of suicide as often as [she] used to." (Tr. 61).

Plaintiff reported that "as far as the pain goes, it helps me to be able to move a little bit better but the pain is still there." (Tr. 61). Plaintiff reported that she performs "some stretching exercises and things like that at home," but lacks the money to attend physical therapy. (Tr. 62). Plaintiff also reported that she "tr[ies] to walk," but "can't do that very much" because of "issues" with her knees. (Tr. 62). As for daily activities, Plaintiff reported that approximately every three days she feels well enough to perform very limited activities around her apartment. (Tr. 63-64).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

---

[3] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

The ALJ determined that Plaintiff suffered from: (1) degenerative joint disease of the knees; (2) status post bilateral knee surgery; (3) fibromyalgia; and (4) major depressive disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-17). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work[4] subject to the following limitations: (1) she can never climb ladders, ropes, or scaffolds; (2) she can only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps/stairs; (3) she can frequently, but not continuously, handle with her dominant right-hand; (4) she can have only occasional exposure to extreme cold, wetness, or vibration; and (5) she can understand, remember, and carry out only short, simple instructions while performing routine tasks. (Tr. 17).

The ALJ concluded that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on ther issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). Ther standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly,

---

[4] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Tom King.

The vocational expert testified that there existed approximately 2,000 jobs in the state of Michigan, and approximately 530,000 nationally, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 81-86). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

a.      Plaintiff is relying on evidence which this Court cannot consider

In support of her arguments in this Court, Plaintiff is relying on a vast amount of evidence that was not presented to the ALJ. (Tr. 4, 461-766). The evidence in question consists of medical records created after the ALJ's decision. This Court is precluded from considering such material. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148.

To establish good cause, the claimant must "demonstrate a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."

*Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir., May 7, 2012). Moreover, the "mere fact that evidence was not in existence at the time of the ALJ's decision" does not satisfy the good cause standard. The Sixth Circuit "takes a harder line on the good cause test with respect to timing and thus requires that the claimant give a valid reason for his failure to obtain evidence prior to the hearing." *Id.* To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

While Plaintiff makes reference to this additional evidence in her pleading, she has failed to request a remand so that this evidence can properly be considered. Likewise, Plaintiff has failed to argue that she satisfies the aforementioned standard to obtain such a remand. Plaintiff has, therefore, waived any argument that this matter be remanded for consideration of the evidence at issue. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Bass*, 499 F.3d at 513 n.3 ("inadequate development" of an argument constitutes waiver of such); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived).

Even if Plaintiff had not waived this argument, the result would be the same. The evidence in question concerns Plaintiff's condition subsequent to the ALJ's decision. While this evidence suggests that Plaintiff's condition deteriorated following the ALJ's decision, such is immaterial and does not support remand. *See, e.g., Ferguson v. Commissioner of Social Security*, 628 F.3d 269, 277-78 (6th Cir. 2010) (medical evidence dated "over a year" after the ALJ's decision

merely "evidences a subsequent deterioration in condition" and "was properly deemed immaterial because it does not necessarily speak to [the claimant's] condition at the relevant time"); *Jones v. Commissioner of Social Security*, 336 F.3d 469, 478 (6th Cir. 2003) ("evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial"); *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992) (same). Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter on this ground.

      b.      Section 12.04 of the Listing of Impairments

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that her impairments satisfy the requirements of section 12.04 of the Listing of Impairments. Section 12.04 of the Listing provides as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A.     Medically documented persistence, either continuous or intermittent, of one of the following:
>
>      1.     Depressive syndrome characterized by at least four of the following:
>
>           a.     Anhedonia or pervasive loss of interest in almost all

activities; or

b.      Appetite disturbance with change in weight; or

c.      Sleep disturbance; or

d.      Psychomotor agitation or retardation; or

e.      Decreased energy; or

f.      Feelings of guilt or worthlessness; or

g.      Difficulty concentrating or thinking; or

h.      Thoughts of suicide; or

i.      Hallucinations, delusions or paranoid thinking; or

2.      Manic syndrome characterized by at least three of the following:

a.      Hyperactivity; or

b.      Pressure of speech; or

c.      Flight of ideas; or

d.      Inflated self-esteem; or

e.      Decreased need for sleep; or

f.      Easy distractibility; or

g.      Involvement in activities that have a high probability of painful consequences which are not recognized; or

h.      Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly

> supportive living arrangement, with an
> indication of continued need for such
> an arrangement.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.04 (2010).

As noted above, this listing is met when the requirements in both sections A and B are satisfied, or when the requirements in section C are satisfied. The ALJ concluded that Plaintiff's impairments failed to satisfy the requirements of either sections B or C. (Tr. 16-17).

With respect to the section B criteria, the ALJ found that Plaintiff experienced: (1) mild restriction in the activities of daily living; (2) mild difficulties maintaining social functioning; (3) moderate difficulties maintaining concentration, persistence, or pace; and (4) no extended episodes of decompensation. (Tr. 16-17). With respect to the section C criteria, the ALJ concluded that "there is no evidence that [Plaintiff] has experienced any episodes of decompensation of extended duration." (Tr. 17). The ALJ further concluded that "the evidence does not indicate that a 'minimal increase in mental demands' or a 'change in the environment' would cause her to decompensate." (Tr. 17). Finally, the ALJ observed that "there is no indication that [Plaintiff] is unable to function outside of a highly supportive living arrangement or that she is completely incapable of functioning independently outside her home." (Tr. 17).

The evidence properly before the Court supports the ALJ's determination. The evidence reveals that Plaintiff experienced an isolated episode in which she was taken to the hospital after becoming extremely intoxicated and expressed suicidal thoughts. Once she became sober, however, Plaintiff denied any suicidal thoughts at which point she was discharged from the hospital. The medical evidence does not suggest that Plaintiff's emotional impairments cannot adequately be treated with conservative methods (medication and/or therapy).

In sum, the record does not support the contention that Plaintiff satisfies the section B or section C requirements of this particular Listing. The burden rests with Plaintiff to demonstrate that she satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). The ALJ evaluated in detail the evidence before him and determined that Plaintiff failed to meet her burden in this regard. The ALJ's decision is supported by substantial evidence.

      c.      Sections 1.02 and 1.03 of the Listing of Impairments

Plaintiff next asserts that she is entitled to relief because her impairments satisfy sections 1.02 and 1.03 of the Listing of Impairment. Section 1.02 of the Listing applies to:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity. . .and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A.      Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;[5]
>
> OR
>
> B.      Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

---

[5] The relevant regulation defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk" caused by "an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(b). Examples of ineffective ambulation include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.*

20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.02.

Section 1.03 of the Listing concerns "Reconstructive surgery or surgical arthrodesis of a major weight- bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.03.

As previously noted, Plaintiff bears the burden of establishing that she satisfies the requirements of any listed impairment. The evidence of record, as detailed above, does not support Plaintiff's position. While Plaintiff underwent surgery on her knees, there is no evidence that Plaintiff is unable to ambulate effectively. Likewise, while Plaintiff experiences limitations with respect to the use of her upper extremities, the record does not support the contention that Plaintiff is unable to perform fine and gross movements effectively. The ALJ concluded that Plaintiff failed to carry her burden that she satisfied either of these listed impairments. This determination is supported by substantial evidence.

d.      The ALJ Improperly Discounted Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that her impairments limit her to an extent well beyond that recognized by the ALJ. The ALJ concluded that Plaintiff's subjective allegations were not entirely credible. Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29,

2002) (same).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ's rationale for rejecting Plaintiff's subjective allegations do not survive scrutiny. The ALJ asserted that Plaintiff treats her impairments with "over-the-counter medications such as Tylenol and Motrin" and "has not taken any narcotic-based pain-relieving medications." (Tr. 20). The clear implication of the ALJ's observation is that Plaintiff's impairments are not sufficiently severe to warrant prescription of stronger and/or more targeted medications, thus diminishing her credibility.

The administrative record contains a Disability Report, completed by a Social Security official, which indicates that Plaintiff was presently taking several medications including Tramadol[6] and Vicodin.[7] (Tr. 257-67). At the administrative hearing, Plaintiff testified that she

---

[6] Tramadol is a "narcotic-like" pain reliever used to treat "moderate to severe chronic pain." Tramadol, available at http://www.drugs.com/tramadol.html (last visited on September 19, 2013).

[7] Vicodin is a narcotic pain reliever used to treat "moderate to severe pain." Vicodin, available at http://www.drugs.com/vicodin.html (last visited on September 19, 2013).

takes the following medications: (1) Lamictal;[8] (2) Cylexa;[9] (3) Arthrotec;[10] and (4) Norco.[11]  (Tr. 61).  The ALJ's conclusion that Plaintiff is less than fully credible because she takes only "over-the-counter" medications is completely unfounded.  To the contrary, Plaintiff's testimony regarding her limitations is consistent with the medication regimen which she has been prescribed.

The ALJ also discredited Plaintiff's testimony based upon the conclusion that her reported activities "reveal a significantly greater functional ability than alleged."  (Tr. 19-20).  In support of this conclusion, the ALJ relied on selective portions of a function report that Plaintiff completed regarding her activities.  (Tr. 248-57).  A review of this report in its totality, however, reveals that Plaintiff's reported activities are not inconsistent with her testimony at the administrative hearing.  Likewise, Plaintiff's statements to her care providers regarding her activities are consistent with the report in question as well as her hearing testimony.  *See Leos v. Comm'r of Soc. Sec.*, 1996 WL 659463 at *2 (6th Cir. 1996) (the fact that a claimant performed limited nonstrenuous activities does not preclude a finding that she experiences pain to a disabling degree); *Wright v. Sullivan*, 900 F.2d 675, 682 (3d Cir. 1990) ("sporadic or transitory activity does not disprove disability"); *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (to be found unable to engage in substantial gainful activity the claimant need not "vegetate in a dark room" or be a

---

[8]  Lamictal is "an anti-epileptic medication, also called an anticonvulsant. . .used either alone or in combination with other medications to treat epileptic seizures in adults and children."  Lamictal, available at http://www.drugs.com/lamictal.html (last visited on September 19, 2013).  Lamictal is "also used to delay mood episodes in adults with bipolar disorder (manic depression)."  *Id.*

[9]  Cylexa is an antidepressant medication used to treat depression.  Celexa, available at http://www.drugs.com/celexa.html (last visited on September 19, 2013).

[10]  Arthrotec is "used to treat osteoarthritis and rheumatoid arthritis in people at high risk for developing stomach or intestinal ulcers."  Arthrotec, available at http://www.drugs.com/arthrotec.html (last visited on September 19, 2013).

[11]  Norco is a "narcotic" pain medication prescribed to treat "moderate to severe pain."  Norco, available at http://www.drugs.com/norco.html (last visited on September 19, 2013).

"total basket case").

The ALJ also placed particular significance in the fact that Plaintiff occasionally cares for her grandchildren. The ALJ fails, however, to identify any evidence that in the course of caring for her grandchildren Plaintiff engages in any activities that are inconsistent with her hearing testimony. To the contrary, the record contains evidence that Plaintiff's ability to care for her grandchildren is significantly limited by her physical limitations. For example, on June 11, 2008, Plaintiff reported to Dr. Kountanis that she "is upset because she cannot play with her grandchildren due to her pain." (Tr. 305). Moreover, as Plaintiff accurately notes, the record contains evidence that Plaintiff does not care for her grandchildren because she possesses an abundance of physical or emotional reserve, but instead does so due to a dysfunctional and unhealthy family dynamic. (Tr. 431-54). The ALJ may be correct when he notes that Plaintiff's act of occasionally caring for her grandchildren "can be quite demanding both physically and emotionally," but absent evidence (as opposed to conjecture) that Plaintiff's activities in this regard are inconsistent with her testimony, the ALJ's rationale lacks sufficient evidentiary support.

Accordingly, the Court finds that the ALJ's rationale for discounting Plaintiff's subjective allegations is not supported by substantial evidence.


      e.      The ALJ's RFC Determination is not Supported by Substantial Evidence

As detailed above, the ALJ assessed Plaintiff's residual functional capacity and concluded that Plaintiff retains the ability to perform a limited range of sedentary work. The ALJ's RFC determination, however, is premised (at least in part) on his unsupported evaluation of Plaintiff's credibility. The Court offers no opinion as to Plaintiff's residual functional capacity, as

determination of such is beyond the authority and skill of this Court, but instead simply concludes that the ALJ's RFC determination is not supported by substantial evidence.

The vocational expert testified that given Plaintiff's RFC, there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. As discussed herein, resolution of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. Accordingly, the Commissioner's decision must be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this**

**matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

A judgment consistent with this opinion will enter.


Date:  September 23, 2013                          /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge